Well, the next case, the last case in the dock, it is case number four to seventeen to zero six to five in re S.A. and appearing for the appellant is attorney Darren Kendall and for the appellee is attorney Darren Manchin, David Manchin. Sorry, Mr. Kimball, are you ready to proceed? You may. May it please the court. Counsel, I'm Darren Kimball and on behalf of the Office of the State Appellate Defender, I represent Scott Bain. There were at least three major claims. The prosecution's key witness, Patrice King, made in this case a trial that were contradicted by statements in two prior recorded conversations she had with the police. The trial court was ultimately unable to hear these contradictions because trial counsel tried but failed to take the steps necessary to admit these recordings as impeachment or as And these contradictions likely would have changed the outcome of this case. Because I'm not sure I follow that. What contradictions did the court not hear about? Because it seemed like to me it was pretty clear in the record the court was well aware that there were contradictory statements. Well, so there was there was a there was a long list of kind of small contradictions. There's three major ones that I want to focus on. And I can go through those now. That's the where Patrice saw Scott drop the handgun, whether Scott had the handgun, where she saw him drop it. And that's specifically, is it the Metro PCS parking lot where this SUV with the teenager starts from the poll camera video that's on the right side of the screen on one side of the street? Or is it in the red and blue? Why is it there? Well, because she all this. So at trial, she says it's at this walk. She says she saw it at this at the Metro PCS parking lot. When you listen to the recordings, she tells the officer she saw it somewhere else. And he says, well, could have been here. Could have been here. She said, maybe at the end of the recording. And this is this is response exhibit number two. The recording was detected towards the end of the recording becomes clear. She says, quote, We heard it. It dropped, comma, something dropped, end quote. And then she she makes clear that she's talking after that, that she heard something. And then after they drove away and left the scene, her friend, Yatana, tells her it was a handgun that dropped. So it's not just the mix up of where this parking lot or this parking lot, which is itself substantial, because she says declaratively at trial. I saw it happen in this parking lot. Well, that's not maybe true. She said it was somewhere else. But she also comes out and says that we heard it happen. And someone else told me later, after we found out that these guys were arrested, that Nate was arrested, the co-respondent, for a weapons offense, then she can backfill these details of the story. She also testifies at trial that the first time she saw the gun was when Scott dropped it. So the state relies on all these other statements that she's saying in this recording that maybe she saw it earlier in the car. As Your Honor noted, if Scott possesses the gun at any point, that's the end of this. But it seems that her story unravels over the course of this recording. And eventually she admits that she might not have seen anything at all. That's damaging. Of course she did not say that she did see anything at all. No, no, that was not a quotation. That's an inference that you're drawing. That's absolutely true. There are two separate parts of the tape. One where she says she heard, and then one where she's talking about the girlfriend mentioning seeing the gun drop. Well, those two things happen. That's right. It's very – well, it is my inference. I would note that the standard for prejudice of ineffective assistance of counsel is whether, if this evidence had come in without the deficient performance of counsel, whether it creates a reasonable likelihood of changing the outcome. So I think inferences are enough. And she was cross-examined about her statement regarding the respondent dropping the bullet, which was then picked up by NB. And her attention was directed to the video, where during the first drop, apparently there's only one person dropping and picking something up. And she's confronted with the inconsistency later. This is all testimony. It's before the trial court. Of where? That's correct. So it comes out where. Is it the Metro PCS parking lot, or is it the red and blue parking lot, which again are across the street from one another at discrete moments in time. They're at one and at the other. And she acknowledged she was in error. Absolutely. That comes – I'm with you, Your Honor, on that. That comes out of trial. That is not – so there's a few strands I want to draw out. But there's an inference you've created, and it was a very well-done argument. But you've created the inference that perhaps she didn't see the gun drop and that she was told that. There's no evidence of that in the record. You've taken out a couple different statements that she makes on the tape, and then that's the inference that you create. She, however, testifies in open court she saw the gun drop. That's absolutely true, Your Honor. But we're talking about firing consistent statements. So if these statements came in and created an inference. It wasn't inconsistent. She didn't say in one instance, I didn't see it drop. And then later she says, I saw it drop. You want to be able to say, well, you said you heard it. Now, of course, we don't know what the response to that's going to be. We don't know whether the state would have gotten up and said, well, did you see it or not? And she says, yeah, I saw it. I agree with all that, Your Honor, except that I think that some context is important here. Where that statement, we heard it drop, something dropped, occurs is in the midst of a discussion between Detrese and Detective Dick about where the gun dropped. And specifically, Detrese has told Detective Dick it was at the Metropolitan, sorry, it was at the Red and Blue, the later parking lot. Detective Dick, and this is all captured in, I created a partial transcript in NXD of the opening brief to really lay this out at length, this whole passage, this discussion. Detective Dick shows Detrese in his police car for this meeting, shows Detrese this recording, People's Exhibit 1, which is the poll camera video. Just as she testifies at trial by watching People's Exhibit 1, the poll camera video, during this conversation in Respondent's Exhibit 2, she's also watching the video. So she's told him it's at the second parking lot, the Red and Blue. And he's trying to get her to say maybe it was at the MetroPCS. He shows her the tape, cues the tape up to a specific moment where he thinks maybe this identifies Scott as standing, Detrese is sitting in the driver's seat of the SUV. She identifies Scott as standing behind the open rear driver's side door, which is blocking most of his body. And Detective Dick points out that someone bends down at a moment. That's all you can make out from the tape. And he asks her, could it have been here? And she says, oh, I never noticed that. Maybe, maybe it could have been. Going on during this discussion, then he's pressing her. Could it have been there? Could that have been where it happened? That's the moment where she says, we heard it drop, something drop. And then my friend Yatana, when we've driven away, says, no, it was a gun that dropped. So it is an inference. But I think context is important that she testifies at trial without a doubt that she saw Scott drop a gun in the first parking lot, MetroPCS. At the very least, she's changed her story, which I think is something that the finer facts should have heard. And also, I think there is an inference here that her story might not be beyond where it happened. It might not be that credible as to whether she saw it at all. That's just the first major inconsistency. So I want to move on to the other two, which both involve money. The second inconsistency, as I characterize it, Detrice repeatedly denied in her testimony that the police had even offered her additional funds. And the quotation of what she denied was, quote, that there was some other funding available for you, possibly. She denied that. But then in the recording, this is Respondents Exhibit 1 with Officer Johnson, Officer Johnson told her that he had, quote, the capability of getting you some money on the side, end quote, but that she had to keep that quiet. So Detrice denies the offer being made to defense counsel and to the prosecutor. And then the prosecutor is uncomfortable with that to the point where she makes an offer of proof to the court to say there was some offer. Why isn't that collateral impeachment? That's for her providing other information at later times on other matters. So I think two ways, Your Honor. The first is Detective Dick, and this is in, I'm sorry, Officer Johnson were on the first of the recordings. This is in Appendix C of the opening brief where I provided the transcript. He mentions this as an aside during a discussion of trying to make sure she goes from meeting him to go to meet Detective Dick. So he's saying you need to go and meet Detective Dick. And then he pauses for a moment and says, also, if you get into any other trouble, and you're right, you're completely right, Your Honor. He's talking about the future, if you learn any new details. But he dangles this as an aside from, please go meet with Detective Dick. Also, I may be able to. Parenthetically, she'd also previously agreed. She had already mentioned, yes, she was obviously interested. She was already on board to go meet with Detective Dick. She was obviously interested in doing this. But he dangles this and says, I can maybe get you some money. So that's the first thing, is that it's the future, but it's the way he's using it. And then the second thing is, if she doesn't cooperate in this case, in her mind, she might think, well, maybe there won't be any future cooperation down the road. And that's also an inference that I'm making here. So that's the first money inconsistency. However, the attorney characterized it as, she was offered additional financial incentives to testify. That was totally untrue. That's true. That is when they went back after the denial of the motion. My understanding is that is when he re-questioned her. And so I haven't really relied on those questions at all. I'm talking about prior to the motion. But I would agree that's sort of a mischaracterization of what's happened here. The third major inconsistency, which also involves money, is that Detrese testified that her cooperation was not, and this is a paraphrase, was not motivated by receiving a warning at the traffic stop rather than thousands of dollars in tickets. She says that that's not the reason why I cooperated, essentially. But Officer Johnson told her on the recording, response to Divot 1, that if he heard she did not cooperate, he could still issue those tickets later. Um, that's, this is maybe the most troubling thing. And on cross-examination, she admitted that the decision to not give her the tickets saved her thousands of dollars in fines and costs. Absolutely. But when we're talking about prejudice, Your Honor, I would turn to the court's ultimate ruling in adjudicating Scott's elinquent, where the court, the court held in finding, I'm looking at my wrong thing, the court found, essentially this court, this case entirely depended on Detrese's testimony. So what the court did was find Detrese credible. This is in the supplemental record, page 8. Uh, the court found Detrese credible and then adjudicated Scott's elinquent of three of the offenses. And that finding was dependent on the credibility finding. So the first thing the court did was say that it found Detrese, Detrese's, quote, testimony didn't appear made up or rehearsed. And the court also believes that the officer's not writing her tickets at the traffic stop doesn't affect the testimony. And here's the key part. Afterwards, she went voluntarily to be interviewed by Detective Dick. So this is, this is what troubles me. It might have changed the court's decision there if the court had known that there was an explicit suggestion made to Detrese by Officer Johnson that if you don't do this, I can still issue these tickets. It's not, he's not doing this out of the goodness of his heart. At least he's not telling her that. He's, he's giving her a break, but saying, if I, if I don't hear from Detective Dick that you followed up, I can still issue those tickets. And that's not an inference. He tells her that. And again, though, that was after she'd already said she was going to go talk to him anyway. That's true. But, you know, ensuring, you know, maybe she's just telling him what he thinks. Maybe she's telling him what he wants to hear. And then she's going to vanish. It's not what the trial court made it out to be because the trial court didn't have the opportunities to hear this contradiction. So, so those are the, those are the three major contradictions that I focus on here.  And there's, there's a number of things that defense counsel could have and should have done to, to really tie these things together for the trial court. The first is that defense counsel didn't specify or make an offer of proof on these different inconsistencies. He focused on one alone, the, the offer of money, which Detrice denied. And that's, that's partly problematic because that was not a prior inconsistent statement of Detrice herself. It was a statement that Officer Johnson made to Detrice and she denied. So it's actually not admissible as a prior inconsistent statement in the way that defense counsel attempted to do so. He could have called Officer Johnson, as the court pointed out, and asked him questions about it. If he had denied it, then he could have impeached Johnson's testimony. But he also could have used Johnson's accurate testimony to impeach Detrice's, Detrice's denial. None of those things happened. He also failed to lay an adequate foundation, either the time, date, and location of the statements for purposes of impeachment, or also for substantive impeachment, substantive purposes under the statutory basis, that the recordings were accurately made. As noted by this court, people versus brothers, that usually involves calling the officers to ask them, the people who have actually recorded the statements, whether the recordings were accurately made. That's normally how this is done. And as I mentioned, the third thing is that the failures to recall these officers. So those things didn't happen here and they should have. And I think one of the key points here is that we know that this was not trial strategy because this was what trial counsel was trying to do. He wanted to admit these two recordings into evidence and failed to do so simply because he did not know the law and failed to take the steps necessary to admit these different inconsistencies. And that's what we, that's what the First District's opinions in People versus Goods and People versus Morris say, that failure can't be trial strategy. When you try to do something and you fail to do it, that's not trial strategy and the presumption doesn't apply in that type of situation. So for all these reasons, we'd ask that this Court reverse and remand for a new trial on the ineffective assistance of counsel argument. Now, if there's no further questions on that argument, I'll turn to the proportionate penalties argument. So turning to that argument, this Court should alternatively reverse Scott's Class III felony adjudication as a violation of the proportionate penalties clause of the Illinois Constitution. So we have the four-card statute and we have the unlawful possession of a firearm statute. As I've said on the briefs, for the specific sections at issue here, the three elements of those statutes are identical. This includes that the person is, one, under the age of 21. Is a proportional penalties clause attack available in a juvenile court proceeding? I believe that it is, Your Honor. I believe that has not been addressed in the briefs. I would be happy to file a supplemental briefing on that issue at this Court's discretion. My understanding is that constitutional violations are generally available for challenge in juvenile proceedings. I will direct you to Rodney H., 223 Illinois 2nd, at 510. 223, 510. Our Supreme Court has noted that Section 11 is directed to the legislature in its function of declaring what conduct is criminal and the penalties for the conduct. It found that the proportional penalties clause in the Eighth Amendment are coextensive. The Court points out how both apply only to criminal proceedings and do not apply in juvenile court proceedings. I will take a look at Rodney H. and file a supplemental briefing. If necessary, we will withdraw the argument. In re Destiny P., 2017, Illinois 120796. In re Deshaun G., 2015, Illinois Appellate 1st, 143316. In re Isaiah D., 2015, Illap 1st, 143507. In re Dave L., 2017, Illap 1st, 170152. It appears that there are a number of opinions on this issue. I will certainly consult those and, as I noted, file a supplemental briefing, which may include the withdrawal of the argument, if necessary. I do apologize to the Court. I would note that this issue was not raised by either party. A point noticed by us as well. Just for the sake of completeness, I'll go through the argument. Since I have not read those cases in preparation for this argument, I can't address your honor's point, but I will file a supplemental briefing to do so. So the three elements that we've set out as being identical in both statutes is one, that the person is under the age of 21, second, that the person has a prior delinquency adjudication, and third, that the person possesses a firearm. People v. Coleman controls in a situation like this where you have one specific offense and one offense that involves an umbrella clause where one of the factors under that specific offense is the unlawful possession statute and the Floyd card statute is the umbrella statute that includes the specific factor that matches the more specific statute of unlawful possession. The umbrella clause is eligibility for a Floyd card, which one of the factors under that eligibility statute is are you under the age of 21 and do you have a prior delinquency adjudication. That matches up identically with the unlawful possession statute. The other issue, which is the main point of contention between Scott and the State, is whether this extra language, do you have a Floyd card, do you not have a Floyd card, is that mere surplusage or is that an element that has to be satisfied here? In the reply brief, I posed a hypothetical about a red balloon and a robbery statute. The robbery statute could be rewritten to add three descriptive categories that could all have a higher penalty attached and that's if you commit robbery while holding a red balloon, if you commit robbery, and this is meant to be silly, but that's sort of the point to demonstrate the principle, that you commit robbery after you've released a red balloon or that you commit robbery while not holding a red balloon at all. That's exactly the principle the Floyd card statute sets out here. Thank you. All right. Thank you, Mr. Kimmel. You'll have time in rebuttal. Mr. Manson. May it please the court, counsel. I think I'm going to have to admit that I am ineffective in this case because I did not even consider the question of whether the proportionality clause applied to juvenile cases and I wish I had. But to get to the meat of the defense respondent's claim here, Williams states in the latest Supreme Court case in Williams, they said for proportionality, you look just to the elements of the offense as listed in the statute. The elements of the two offenses here are not the same. For the Floyd card, you have to prove the defendant's status of the Floyd card. That's irrelevant for the unlawful use. So there can be no proportionality, even if it applied. With respect to ineffective assistance of counsel, counsel is basically arguing his attorney was ineffective because the trial court ruled against him. The trial court ruled that these prior statements did not come in because he had failed to show that they were inconsistent. There was no claim raised or made or no ruling based upon the, on appeal he says, they should have proved that it was accurately recorded and all the foundation. That was simply not the basis for the court's ruling and providing that foundation would have changed nothing in this case. But the failure to establish that foundation as far as the accuracy of the recording or simply cannot establish ineffective or defective performance in this case because the trial court's ruling was that this was not inconsistent. Defendant has not challenged that trial court's ruling here. He just simply says his attorney should have done more to try to get the statements in. The problem with that is that the inconsistencies, if any, in these statements, the primary one was... Well, to be fair, he's saying that the judge wouldn't have ruled that way had he known this other information. Well... I mean, he is, he is... Well, the... ...the court's ruling. Yeah. The information as to the, where the gun was dropped was before the jury and was before the trial court so that the failure to bring the tape recordings to establish the same fact cannot establish ineffective assistance to counsel or show that there's some kind of prejudice because that information was, in fact, before the jury. The questions asked regarding the other funding and as presented by defense counsel of Lowell was that she was offered other funding or other financial incentives to testify in this particular case. That was simply not the case and it would not have been established by the tape recordings. As the prosecutor pointed out in his argument to exclude these statements, the offer of money was simply if she provided... There's a possibility that she could get other monies if she provided other information in other cases. That has absolutely nothing to do with this case and impeachment on that matter would have been completely collateral. This offer of the money was not an incentive to get her to testify or an incentive to talk to the detective. The police officer in his own conversation said, on a side note, so this is absolutely irrelevant to anything in the case so that the failure to present this information about the other money cannot establish ineffective assistance because he simply could not have gotten that in in any way, shape, or form. It's not an inconsistent statement because her testimony was, I was not offered other financial incentives to testify. That is not inconsistent with the offer for other monies for other information in the future. There's no inconsistency there. It cannot be brought in to establish bias because again, and it wasn't offered below as bias. The defendant has changed things to say that he should have offered it as bias rather than just as substantive or impeachment. But it does not show bias in this case that she's offered the possibility of money if she comes forward with some information in the future. So that the information as to this other monies simply could not have come in so there could be no ineffective assistance in not presenting. Then we get to the question of prejudice. Had these two statements gotten in, I think the argument on appeal today would be that defense counsel was incompetent for presenting these statements to the jury because to a large extent these statements were completely consistent with her trial testimony. The only inconsistency was where was the gun dropped? But her testimony was completely clear and consistent that yes, she saw the defendant with the gun, with the response with the gun. She described in the tape recording, she described the gun as an automatic pistol and identified a photograph of a, a photograph as being similar to the gun that she saw on that occasion. Presenting these statements to the jury would have allowed the jury to hear two other consistent statements of the, of Ms. King where she says, I saw respondent give the gun to Nate. I do not believe that defendant can, that prejudice can be established by the failure to present this evidence that while impeaching on minor matters would have been highly corroborative of every aspect of her testimony as to the way in which the incident occurred, the number of people in the car, where the people were sitting. The tape recordings also contained very highly prejudicial information that was not developed as fully at trial, namely the discussions in the car about going to beat somebody up in the barbershop. Testimony about going to, statements about going, wanting to go get drugs. Statements about D-Baby having a gun. That's the other only, only real inconsistency in the statements. She told one officer but not the other about D-Baby, but she testified at trial that there was discussion in the car about D-Baby having a gun. So again, there is absolutely no prejudice of the defendant to this respondent for not getting these prior statements in. The statements, other than the one reference to hearing the gun drop as well as seeing it, there is no indication in these statements that she did not in fact see a respondent with a gun. In the first statement, she tells the police Steve gave Nate the gun, then she goes to her phone, goes to Facebook, pulls up a picture of this respondent and says this is the Steve that gave him the gun. So she identifies respondent as being with a gun but giving him the wrong name in the first statement. In the second statement, she repeatedly says, I forget how many times, that she saw him with the gun and giving it to Nate. So that any inconsistency in the statement about an inference that he could draw from somebody's saying, about the talking about having heard it drop, simply would not have changed any results of this trial. When you consider the degree of consistency between the prior statements and the testimony at trial. So I submit that the claim of ineffective assistance based on failure to do more to get these statements in should be rejected by this court. There are no questions? I don't see any. Thank you. Thank you very much. Mr. Kelly. May it please the court. This was a bench trial. There was no jury involved. And the state's argument under prejudice for the ineffective assistance argument that there were all these details in the recordings which if they had come in would have been blamed. The passions of the jury, that doesn't apply here. We have an assumption that the trial judge would exercise restraint and not be swayed by extraneous details. And as I set out in the reply brief, the things the state is talking about, this mention of marijuana, talking about going and fighting at the barbershop, it's not that inflammatory. And beyond the mention of marijuana, it's consistent with what did come out of trial. This was defense counsel's strategy to bring in these two recordings. And as the state notes, the defense counsel did a fairly good job otherwise beyond trying and failing to introduce these two recordings. Those two positions the state has taken are inconsistent. The defense counsel did a good job and that these recordings would have been damaging to his case if they had come in. That was the strategy, was to get them in. You have to reconcile those two positions. Now, the state makes a point under deficient performance that this is, the argument that we're making is not the basis on which the court ultimately rejected the admission of these two recordings. And that's correct. But I think delving into what the court, how the court decided that is actually important here. Because the court made a mistake. The court rejected the idea that Detrese had denied there being this offer. I think this goes to your honor, Justice DeArmond's point from a minute ago. The court either misremembered the testimony that had happened or was confused about what had been said. Because in denying the admission of these recordings, the court said that Detrese didn't say that. That she didn't deny that an offer of money had been made. And we can quibble about whether the offer of money dealt with future knowledge. And I think that it did. But she denied that the offer was made. And the court didn't remember that that denial occurred. So the fact that it's in the record that that testimony occurred and was before the court is actually not as important as we might think. Because the court didn't remember it happening. And that was the basis for the ruling. The state says that, well, that was the basis for the ruling. You can't argue about these other things. This court can affirm on any basis in the record. And so if the court hadn't ruled on that basis, it could have equally ruled on the So you can't bring it in that way. It could have ruled that the foundation hadn't been laid. And this court can affirm on any of those bases. So we're prevented from arguing that the court erred here because there were alternative bases. And defense counsel was ineffective, provided deficient performance by not properly presenting that evidence. So that's the way we're able to make this argument. Now back to prejudice. The state, I think this was, it's clear this was a close case. And we can see that in the court's ultimate ruling here. In talking about DeTresa's credibility, that there were some inconsistencies here. But ultimately, the court found her credible. And that swung the case. Whether she was credible or not provided the outcome here. Just the physical setup, I'm going to talk about the moment in the SUV where she allegedly sees Scott drop a gun behind her while she's sitting in the driver's seat of her SUV. And he's standing between the open rear driver's side door, the door behind her. He's standing between that open door and the body of the car. From the poll camera video, we can see from across the street, we're looking at the driver's side of the car. So all you can see is an open door. And this is a ways away. You can see an open door and someone's feet below the door. And then that person bends down for a moment. That's the moment that Detective Dix says, hey, it could have been right here. And Patrice says, oh, yeah, I never noticed that. Maybe that's where it could have been. And then by the time of trial, she says, that's where I saw it happen. I just want to talk about the physical setup here because I think it's important. She's sitting in the driver's seat. And this is happening behind her over her left shoulder with an open door blocking any view she might have had in the left rear view mirror. It's not necessarily a very plausible scenario that she can see through her seat back, that she can see through this door to see what's happening. So this statement in response to Exhibit 2 that she ultimately says, we heard it drop, something drop, while discussing this dispute of where it happened, I think is important here. And it may well have undermined all the other statements she made before in the recording that happened at the red and blue. And it may well have undermined the statement she made confidently at trial. She saw it in a place that she before had said it was somewhere else. So it may feel like pulling on one thread in the recording, but I think it's important and it might have swung this case. Thank you. Okay. Thank you, counsel. The case will be taken under advisement and a written decision shall live two days. Court stands in recess.